173 N.J. Super. 11 (1980)
412 A.2d 1352
POINT PLEASANT BEACH TEACHERS ASSOCIATION, RUTH O'NEIL, ELAINE HENNESSEY AND MARJORIE WATSON, PETITIONERS-APPELLANTS,
v.
DR. JAMES CALLAM AND BOARD OF EDUCATION OF THE BOROUGH OF POINT PLEASANT BEACH, OCEAN COUNTY, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1980.
Decided March 27, 1980.
*13 Before Judges BISCHOFF, BOTTER and MORTON I. GREENBERG.
Martin B. Anton argued the cause for appellants.
Seymour J. Kagan argued the cause for respondents (Berry, Summerill, Piscall, Kagan and Privetera, attorneys).
Ruhlman and Butrym, submitted a brief for amicus curiae New Jersey Educational Association (Cassel R. Ruhlman, Jr., and Richard A. Friedman on the brief).
David W. Carroll submitted a brief on behalf of amicus curiae New Jersey School Board Association (Christine D. Weger on the brief).
John J. Degnan, Attorney General of New Jersey, submitted a statement in lieu of brief on behalf of the New Jersey State Board of Education (M. Kathleen Duncan, Deputy Attorney General, on the statement).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
The sole issue presented by this appeal is whether teachers employed under Title I of the Elementary and Secondary Education Act, 20 U.S.C.A. § 236 et seq., are "teaching staff members" within the meaning of the teacher tenure statute, N.J.S.A. 18A:28-5. The Commissioner of Education held that they were teaching staff members and therefore were entitled to acquire tenure. The State Board of Education on appeal held they were not and reversed. This further appeal followed.
Petitioners Ruth O'Neil, Elaine Hennessey and Marjorie Watson were members of petitioner Point Pleasant Beach Teachers Association (Association) employed by the Board of Education of *14 the Borough of Point Pleasant Beach of Ocean County (board) and assigned to the board's Title I program, a federally funded project providing special instruction under the Elementary and Secondary Education Act, 20 U.S.C.A. § 236 et seq.
The individual petitioners were all required to hold and did hold valid teaching certificates issued by the New Jersey State Board of Examiners and have taught in the Point Pleasant Beach School System for a sufficient length of time to acquire tenure. Petitioner Hennessey was initially hired by the board as a supplemental instruction teacher from January until June 1969. She was thereafter employed annually as a Title I supplementary reading teacher from October 1, 1970 until June 1976. Her daily teaching hours were four hours in 1972-73 and 1973-74, and five hours in 1974-75 and 1975-76. Petitioner Watson was employed by the board as a Title I teacher from February 1972 until June 1976. Her daily teaching hours were two hours in 1972-73, three hours in 1973-74 and four hours in 1974-75 and 1975-76. Petitioner O'Neil was continuously employed by the board as a Title I teacher from October 1, 1969 until June 1976 and acted as coordinator of the program for the 1975-76 school year. Her daily teaching hours increased from three to four hours, then five hours, and finally to six hours when she was appointed coordinator.
Petitioners were paid on an hourly basis during the school year and worked daily, the same as other teachers in the district. Petitioners' duties required them to execute weekly lesson plans, schedule pupils to receive special instruction, order supplies and materials, arrange and conduct parent conferences twice each year, maintain individual progress folders for each pupil and report the pupil's progress to the homeroom teachers, and attend PTA meetings and staff conferences. They did not, however, have any homeroom or playground duties and did not receive a free lunch period. Petitioners were covered by the Point Pleasant Beach Teachers Agreement between petitioner Association *15 and defendant board, although the board claims they were never mentioned in negotiations and did not receive contracts.
In December 1975 the individual petitioners sought clarification from the superintendent of schools on their right to tenure, sick leave, pension benefits and health and accident insurance. The superintendent of schools informed the president of the association that teachers under the Title I program were not entitled to fringe benefits, though the individual petitioners "probably" had part-time tenure.
On April 14, 1976 petitioners filed a petition with the Commissioner of Education seeking a declaration that they were entitled to tenure under N.J.S.A. 18A:28-5, retroactive fringe benefits and other relief. On October 1, 1976, when petitioners reported for work, they were informed that Title I funds were unavailable and that the program and their teaching positions had been discontinued.
After a hearing the Commissioner held that petitioners were entitled to part-time tenure and seniority rights as teaching staff members under their certification. He rejected petitioners' challenge to the board's abolition of the Title I program. On appeal the State Board of Education held that petitioners were hired as temporary employees and did not acquire the status of teaching staff members.[1]
N.J.S.A. 18A:28-5 provides in part:

The services of all teaching staff members including all teachers, principals, assistant principals, vice principals, superintendents, assistant superintendents, and all school nurses including school nurse supervisors, head school nurses, chief school nurses, school nurse coordinators, and any other nurse performing school nursing services and such other employees as are in positions which require them to hold appropriate certificates issued by the board of examiners, serving in any school district or under any board of education, excepting those who are not the *16 holders of proper certificates in full force and effect, shall be under tenure . ., after employment in such district or by such board for:
(a) three consecutive calendar years, or any shorter period which may be fixed by the employing board for such purpose; or
(b) three consecutive academic years, together with employment at the beginning of the next succeeding academic year; or
(c) the equivalent of more than three academic years within a period of any four consecutive academic years;
........
[Emphasis added]
The term "teaching staff member" is defined by N.J.S.A. 18A:1-1, which provides in part:
"Teaching staff member" means a member of the professional staff of any district or regional board of education ... holding office, position or employment of such character that the qualifications, for such office, position or employment, require him to hold a valid and effective standard, provisional or emergency certificate, appropriate to his office, position or employment, issued by the state board of examiners and includes a school nurse.
Each petitioner in this case was employed for the equivalent of three academic years within four consecutive academic years and held a position which required a teaching certificate issued by the Board of Examiners. They fall within the literal terms of N.J.S.A. 18A:1-1 and 18A:28-5, and therefore could be considered eligible for tenure. Moreover, petitioners performed teaching functions substantially similar to those performed by staff members. See Downs v. Hoboken Bd. of Ed., 13 N.J. Misc. 853 (Sup.Ct. 1935).
Substitute teachers would also appear facially to qualify for tenure under the statute. But it is now well settled that they are not "teaching staff members" within the meaning of N.J.S.A. 18A:28-5, and time served as a substitute teacher is not to be counted toward tenure. Schulz v. State Bd. of Ed., 132 N.J.L. 345 (E. & A. 1945); Biancardi v. Waldwick Bd. of Ed., 139 N.J. Super. 175 (App.Div. 1976), aff'd o.b. 73 N.J. 37 (1977). Nor do guidance counselors working part time in an adult evening school established as an optional program acquire tenure in their *17 position. Capella v. Camden Cty. Voc. Tech. Sch. Bd. Ed., 145 N.J. Super. 209 (App.Div. 1976).
Whether a professional employee of a board of education qualifies as a teaching staff member eligible for tenure depends upon the nature of the employment tendered and accepted. This determination can only be made after an examination of the terms, conditions and duties of the employment and a consideration of the conduct of the parties. Biancardi v. Waldwick Bd. of Ed., supra, 139 N.J. Super. at 213.
The facts presented here disclose many areas where the relationship between petitioners and the board differed substantially from the relationship between the usual teaching staff member and the board.
Unlike the regular teaching staff, petitioners were hired annually without written contract, for the period starting October 1 and continuing to June "as needed," and were paid on an hourly basis. Petitioners individually submitted a written request for employment each year and waited for notification of re-employment, implicitly admitting they did not have tenure, were not eligible to acquire tenure (N.J.S.A. 18A:27-10) and that their employment was temporary and contingent upon federal funding. Biancardi v. Waldwick Bd. of Ed., supra at 177. While petitioners performed duties functionally similar to those of other teachers, they were restricted to the Title I program and acted primarily as tutors giving individual remedial aid to the children.
N.J.S.A. 18A:27-3.1 requires that all nontenured teaching staff members be evaluated at stated intervals, and N.J.S.A. 18A:27-10 requires the board of education to give to each nontenured teaching staff member either a written contract of employment or notice that such employment will not be offered. It is undisputed that petitioners were not evaluated and were not given either a written contract or notice of termination. And while petitioners must certainly have been aware that other teachers were being evaluated and tendered contracts, petitioners *18 did not protest this disparate treatment either in person or through the union grievance procedure until the letter of December 1975. This letter, which was written three, four or five years after petitioners' employment, was their first assertion of any right to either tenure or fringe benefits. Moreover, petitioners never made application for membership in the Teachers Pension and Annuity Fund, N.J.S.A. 18A:66-1 et seq.
A further element to be considered in determining if a professional employee qualifies as a teaching staff member is whether the program in which he is employed requires a flexibility in operation which would be impeded if its instructors were granted tenure. Capella v. Camden Cty. Voc. Tech. Sch. Bd. Ed., supra, 145 N.J. Super. at 214-215. In that connection, the source of funds for the program is relevant. It relates directly to the question of whether petitioners were offered and accepted temporary employment. The source of the funds is relevant only insofar as it sheds light on the nature of petitioners' employment and it was in that manner that the State Board of Education considered it, stating:
When because of uncertainty in the source of funding, a local board in good faith hires a professional employee on a basis plainly understood to be temporary, such appointment does not give the employee the status of a teaching staff member.
The State Board held that petitioners were hired on a temporary basis, understood that to be the nature of their employment and accepted it as such. The record fully supports that conclusion, and the decision of the State Board of Education is:
Affirmed.
NOTES
[1] Petitioners apparently did not appeal the Commissioner's finding that the school board abolished their positions in good faith and that issue is not raised on this appeal.